UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RACHEL QUINTANAR & REYNALDO QUINTANAR,<br><br>　　　　　　　　　　　Plaintiffs,<br><br>v.<br><br>COUNTY OF SAN DIEGO, et al.,<br><br>　　　　　　　　　　　Defendants. | Case No.: 3:24-cv-01286-CAB-DEB<br><br>**ORDER PARTIALLY GRANTING MOTION TO DISMISS**<br><br>[ECF No. 6] |

　　　Plaintiffs Rachel and Reynaldo Quintanar bring this lawsuit pursuant to 42 U.S.C. § 1983 and other state and common law causes against the County of San Diego and unnamed San Diego County Sheriff's Department Defendants (Deputy Defendants 1–5 and Doe Defendants 1–20). [*See generally* First Amended Complaint, ECF No. 4.] The County filed a motion to dismiss Plaintiffs' false arrest and negligence claims, Bane Act claim, and the Section 1983 claims against Deputy Defendants 3–5. [ECF No. 6-1 at 5.] The Court grants the motion as it relates to Deputy Defendants 3–5 and partially grants the motion as to the negligence claim.

**I.　　FACTUAL ALLEGATIONS**

　　　The Court takes the alleged material facts as true and construes them in the light most favorable to Plaintiff. *Stoner v. Santa Clara Cnty. Office of Educ.*, 502 F.3d 1116,

1120 (9th Cir. 2007). According to the first amended complaint, on Aug. 19, 2023, in San Diego County, Deputy Defendants 1 through 5 (and all 20 Doe Defendants) arrived at a home shared by Rachel and Reynaldo Quintanar in response to a disturbance call. [FAC ¶ 16.] Deputy Defendant 1 allegedly yelled at Ms. Rachel Quintanar, threatened to punch her, and following through on that threat, broke Ms. Quintanar's nose. [*Id.*] Plaintiffs allege that Mr. Reynaldo Quintanar, a sexagenarian, saw the punch and "moved towards his daughter" until he too suffered a beating from Deputy Defendant 1. [*Id.*] Plaintiffs claim that as the beating of Mr. Quintanar continued, Deputy Defendant 2 tackled Ms. Quintanar, and Deputy Defendants 3–5 followed suit. [*Id.* ¶ 17.] At some point, Deputy Defendant 1 allegedly informed Deputy Defendants 2–5 that Ms. Quintanar had reached for his gun, a claim Plaintiffs label a fabrication. [*Id.*] In response, one or more of the Deputy Defendants apparently tased Ms. Quintanar in her recumbent position. [*Id.*]

Plaintiffs allege that the attack on Mr. Quintanar resulted in a broken arm, known to Deputy Defendant 1. [*Id.* ¶ 18.] Mr. Quintanar asked the Deputy Defendants that they not lift him by that arm. [*Id.*] Plaintiffs claim that the Deputy Defendants ignored this request, exacerbating the pleaded injuries. [*Id.*]

With respect to Ms. Quintanar, a Deputy Defendant apparently transported her to the Alvarado Hospital and informed hospital staff to ignore her cries for medical attention on account of her intoxication. [*Id.* ¶ 19.] Plaintiffs claim that the Deputy Defendant informed staff that any medical care could be provided by the jail. [*Id.*] Allegedly, that care never came since Defendant County of San Diego refused to medically intervene on the jailed Ms. Quintanar's behalf even after a staff member at the jail apparently identified Ms. Quintanar's wrist as broken. [*Id.*] As a result of the alleged acts, she reportedly suffered a broken nose, sprained wrist, bruising, and taser-related injuries. [*Id.* ¶ 21.] Mr. Quintanar purportedly broke his elbow. [*Id.*] Plaintiffs claim that both father and daughter now fear law enforcement, and that Ms. Quintanar suffers from incident-related mental health problems. [*Id.*]

The Quintanars assert that no criminal charges were ever filed against them. [*Id.* ¶ 22.]

## II. LEGAL STANDARD

To adjudicate Defendants' motion to dismiss, the familiar standard applies. Fed. R. Civ. P. 12(b)(6) permits a party to file a motion to dismiss for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Vague and conclusory allegations" concerning government involvement in civil rights violations are insufficient to withstand a motion to dismiss. *Ivey v. Bd. Of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

## III. ANALYSIS

### A. Plaintiffs Have Adequately Pled a False Imprisonment Claim Against the County

Defendants argue that Plaintiff has not sufficiently pleaded a false imprisonment claim. They fail to provide the Court with any legal framework (as opposed to reciting the 12(b)(6) standard) that governs their argument. The Court has jurisdiction over the false imprisonment claim, as it does with the other state/common law claims, under its supplemental jurisdiction. 28 U.S.C. § 1367(a). The County has not moved to dismiss the federal question claims that provide this Court with original jurisdiction.

Under California law, false imprisonment "consists of the 'nonconsensual, intentional confinement of a person, without lawful privilege, for an appreciable length of time, however short.'" *Fermino v. Fedco, Inc.*, 872 P.2d 559, 567 (Cal. 1994) (quoting *Molko v. Holy Spirit Ass'n*, 762 P.2d 46, 63 (Cal. 1988)). "The only mental state required . . . is the intent to confine, or to create a similar intrusion"; the intent element need "not entail an intent or motive to cause harm." *Id.* "The elements are (1) nonconsensual, intentional confinement of a person, (2) without lawful privilege, (3) for an appreciable period of time, however brief." *Gutzalenko v. City of Richmond*, 723 F. Supp. 3d 748, 761

(N.D. Cal. 2024) (citing *Easton v. Sutter Coast Hosp.*, 95 Cal. Rptr. 2d 316, 323 (Ct. App. 2000)). Vicarious liability under California law is supplied by Gov. Code § 815.2.

Taking the pleaded facts as true, Plaintiffs have alleged each element of the false imprisonment claim (at least on part of Deputy Defendants 1–2). Plaintiffs plead (1) the use of nonconsensual force in the form of restraints on the Quintanars, (2) that Plaintiffs were arrested without a warrant and without probable cause, and (3) that the confinement lasted for some time (even if brief).

Defendants' principal argument is that Plaintiffs themselves allege that Deputy Defendant 1 identified a threat on part of Ms. Quintanar—and that fact supports probable cause. [ECF No. 6-1 at 7.] "California law protects a law enforcement officer from liability for false arrest or false imprisonment where the officer, acting within the scope of his or her authority, either (1) effects a lawful arrest or (2) has reasonable cause to believe the arrest is lawful." *Marsh v. San Diego Cnty.*, 432 F. Supp. 2d 1035, 1054 (S.D. Cal. 2006) (citing *Cervantes v. United States*, 330 F.3d 1186, 1188 (9th Cir. 2003)). But as alleged, that is not the full story: Plaintiffs plead that Deputy Defendant 1 lied when he made that claim. [FAC ¶ 17.] At this stage, the Court must take the facts in the light most favorable to the Plaintiff and accordingly denies Defendants' motion to dismiss the false imprisonment claim.

**B. Plaintiffs Did Not Timely File Their Second Claim Letters**

Plaintiffs allege in their complaint that they timely filed their claim for damages, pursuant to Government Code § 910 with Defendant County of San Diego. [FAC ¶ 13.] Defendants contest that. Under the California Tort Claims Act, before one can sue a California government entity or employee for damages, he must timely present his claim to the entity, which then must reject it in whole or part. *See, e.g.*, *Portillo v. City of Nat'l City*, No. 20-CV-2429 W (MDD), 2022 WL 1004238, at *3 (S.D. Cal. Apr. 4, 2022); *see also* Cal. Gov. Code § 945.4.

Plaintiff did not attach any claim letter to the complaint. "Generally, district courts may not consider material outside the pleadings when assessing the sufficiency of a

complaint under Rule 12(b)(6)." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998, 1002 (9th Cir. 2018) (internal quotation marks omitted). The incorporation-by-reference doctrine, however, permits the Court to treat "certain documents as though they are part of the complaint itself . . . if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Id.* at 1002. Defendants provided a copy of Plaintiffs' claim letters, supported by a sworn declaration, as an exhibit in their motion to dismiss. [ECF No. 6-3.] Plaintiffs do not contest the authenticity of those letters. As Plaintiffs refer to and rely on the claim letters in their complaint, the Court finds it proper to incorporate the letters into the pleadings by reference.

Between them, Plaintiffs have filed four separate claim letters (two for each Plaintiff): one pair on February 16, 2024, [ECF No. 6-3 at 4–8], and the second pair on August 19, 2024 [ECF No. 6-3 at 9–16]. Defendants do not contest the initial claim letters' timeliness. But Plaintiffs appear to have filed the August claim letters *after* Defendants filed a motion to dismiss. The Court resolves whether Plaintiffs timely filed the amended claim letters before moving on to claim-based objections to the initial claim letters.

A claimant may amend a claim until the later of: (1) the date when the entity takes final action on the claim, or (2) the time to file a timely claim expires pursuant to Cal. Gov. Code § 911.2. Cal. Gov. Code § 910.6. Timely claim presentation is not merely a procedural requirement but is "a condition precedent to plaintiff's maintaining an action against defendant" and thus an element of the plaintiff's cause of action. *State of California v. Superior Court*, 90 P.3d 116, 119 (Cal. 2004) (quoting *Williams v. Horvath*, 548 P.2d 1125, 1130 (Cal. 1976)).

The County had 45 days to act on a claim. Cal. Gov. Code § 912.4(a). If a claim is not acted upon within those 45 days, Cal. Gov. Code § 912.4(c) sets forth a provision whereby the claim is deemed rejected (a final action by the board). *See Potstada v. City of Oakland*, 106 Cal. Rptr. 705, 708 (Ct. App. 1973) ("[A] claim is deemed to have been rejected by operation of law when the city council refuses or fails to act within the 45-day period provided for in section 912.4."). As such, plaintiffs should have filed an amended

claim no later than February 19, 2024 (i.e. 6 months from the date of the alleged incident) or, at the latest, April 1, 2024, (i.e. the date the County rejected the claims by force of law). The Court will thus not consider the amended claim letters.

### C. The Bane Act Claim Complies with the Requirements of the CTCA

Looking to only the February claim letters, Defendants argue that Plaintiffs provided insufficient facts (and therefore inadequate notice) relating to their Bane Act claim.

Ms. Quintanar's initial claim letter contains the following description:

> Unknown Sheriff deputy entered claimant's home and punched her in the face, fracturing her nose. A second unknown deputy then tackled claimant and tased her.

[ECF No. 6-3 at 4.] Mr. Quintanar's follows:

> Unknown Sheriff deputy entered claimant's home and assaulted claimant's daughter. The unknown deputy then punched and kneed claimant multiple times, then threw him on the ground, breaking his arm. Although deputies knew or should have known that the deputy had broken claimant's arm, the unknown deputies then picked claimant up off the floor by his arm, further injuring the broken arm.

[*Id.* at 7.] Both contain the following "fault statement":

> Unknown San D[ie]go County Sheriff's deputies used excessive force, and unreasonably searched and seized claimant.

[*See id.* at 10.]

To comply with the CTCA, a claimant must state the date, place, circumstances of the claim, name of any employees responsible if known, and a general description of the injury, damage, or loss as is known at the time the claim is presented to the entity. *See* Cal. Gov. Code § 910; *see also Sanders v. City of Fresno*, No. CIVA 05-0469 AWISMS, 2006 WL 1883394, at *5 (E.D. Cal. July 7, 2006). These requirements are intended to "provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation." *City of San Jose v. Superior Ct.*, 525 P.2d 701, 706 (Cal. 1974). "Although federal courts do not have jurisdiction over

the underlying petitions, it is proper for federal courts to determine whether a plaintiff bringing tort claims against a public entity has complied with the [C]TCA." *Acevedo v. City of Farmersville*, No. 1:18-cv-01747-LJO-SAB, 2019 WL 3003996, at *6 (E.D. Cal. July 10, 2019) (citing *United States v. State of Cal.*, 655 F.2d 914, 918–19, n.3 (9th Cir. 1980)).

The CTCA, however, does not require a plaintiff "to specify each cause of action he intends to assert; rather, it requires only that 'each cause of action . . . be[] *reflected* in a timely claim.'" *Carr v. Cnty. of San Diego*, No. 19-CV-1139 JLS (MDD), 2020 WL 1046874, at *4 (S.D. Cal. Mar. 4, 2020) (alteration in original) (quoting *Nelson v. California*, 139 Cal. App. 3d 72, 79 (1982)). "Because the CTCA is designed to give a public entity 'notice sufficient for it to investigate and evaluate the claim . . . [it] need not contain the detail and specificity required of the pleading, but need only fairly describe what the entity is alleged to have done.'" *Garber v. City of Clovis*, 698 F. Supp. 2d 1204, 1216 (E.D. Cal. Mar. 19, 2010) (citing *Stockett v. Ass'n of Cal. Water Agencies Joint Powers Ins. Auth.*, 99 P.3d 500, 502 (Cal. 2004)).

The caselaw makes clear that the propriety of notice depends on the facts alleged in the claim form. "A complaint's fuller exposition of the factual basis beyond that given in the claim is not fatal, so long as the complaint is not based on an entirely different set of facts." *Stockett*, 99 P.3d at 503 (internal quotation marks omitted). "Only where there has been a 'complete shift in allegations, usually involving . . . acts or omissions committed at different times or by different persons than those described in the claim,' have courts generally found the complaint barred." *Id.* (quoting *Blair v. Superior Ct.*, 218 Cal. App. 3d 221, 226 (Ct. App. 1990)). Indeed, "it is permissible to plead additional theories where the additional theories [are] based on the same factual foundation as those in the claim, and the claim provide[s] sufficient information to allow the public agency to conduct an investigation into the merits of the claim." *Carr*, 2020 WL 1046874, at *4 (alterations in original) (internal quotations mark omitted).

Defendants' argument is familiar: "Plaintiffs' claim is devoid of any allegations that could be construed to satisfy the second 'threats, intimidation, or coercion' element of a Bane Act claim." [ECF No. 6-1 at 6.]

"The Bane Act provides a cause of action for interference 'by threats, intimidation, or coercion' or attempted interference, 'with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state.'" *Muhammad v. Garrett*, 66 F. Supp. 3d 1287, 1295 (E.D. Cal. Dec. 11, 2014) (quoting Cal. Civ. Code § 52.1). To prove a Bane Act claim, plaintiff must demonstrate interference with a constitutional right accompanied by coercion. *Id.* (citing *Jones v. Kmart Corp.*, 949 P.2d 941, 943–44 (Cal. 1998)).

Both claim letters allege acts relating to the unwanted use of force or seizure. The Ninth Circuit has held that "the Bane Act does not require the 'threat, intimidation[,] or coercion' element of the claim to be transactionally independent from the constitutional violation alleged" as long as the claimant shows the defendant had a "specific intent" to commit the constitutional violation. *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018). The specific intent requirement is satisfied where the defendant acted with "[r]eckless disregard of the right at issue." *Estate of Serna v. Cnty. of San Diego*, No. 20-cv-2096-LAB-MSB, 2022 WL 827123, at *8 (S.D. Cal. Mar. 18, 2022) (quoting *Cornell v. City & Cnty. of San Francisco*, 225 Cal. Rptr. 3d 356, 386 (Ct. App. 2017)) (alteration in original).

There is no question that "tackling" Ms. Quintanar or incapacitating Mr. Quintanar (with force) raises the specter of coercion. The County has argued similarly before, and the Court has rejected it. *Bradley v. City of San Diego*, No. 3:24-CV-01216-CAB-JLB, 2025 WL 20437, at *4 (S.D. Cal. Jan. 2, 2025). The same reasoning applies here. Plaintiffs' claim letter states that an unknown Sheriff's deputy punched Ms. Quintanar in the nose, her face, and that a second deputy tackled and tased her. [ECF No. 6-3 at 4.] Mr. Quintanar's letter states that after assaulting Ms. Quintanar, an unknown deputy punched

and kneed Mr. Quintanar multiple times, threw him to the ground, broke his arm, and deliberately picked him up by that same arm. [ECF No. 6-3 at 8.] Plaintiffs have clearly supplied facts—in the form of an alleged vicious and unnecessary beating—that show reckless disregard of the rights at issue.

The Court denies Defendants' challenge to the Bane Act claim based on the CTCA.

### D. Plaintiffs' Negligence Claim Is Partially Dismissed

Defendants seek to dismiss Plaintiffs' negligence claim under two theories: one for failure to provide proper notice under the CTCA, and the second, for failing to state a claim under Rule 12(b)(6). As discussed, the Court is only considering the February claim letters.

#### 1. Plaintiffs' Negligence Claim Partially Complies with the CTCA

Courts have routinely rejected the argument that claim forms describing intentional torts cannot support a later claim for negligence, as long as the core facts from which the negligence claim arises remain the same. *See Acevedo*, 2019 WL 3003996, at *8 (finding plaintiff complied with CTCA in bringing intentional infliction of emotional distress cause of action, despite not describing any emotional or mental injuries in written claim to city, because IIED claim stemmed from "same core acts as plaintiff's other causes of action, i.e., the allegedly excessive force used").

The CTCA does not force Plaintiffs "to specify each cause of action [they] intend[] to assert." *Carr*, 2020 WL 1046874, at *4. This Court concludes that any negligence claim arising from the alleged beating/tackling of Mr. and Ms. Quintanar was well-captured by the claim forms' descriptions of the events that supposedly occurred on August 19, 2023 at the Quintanar home. *See* Cal. Gov. Code § 910 (claim form must include date, place, circumstances, and description of injury and damages).

Nevertheless, the Court agrees with Defendants that those claim letters were deficient in providing notice of any acts at the Alvarado Hospital or the jail. Although a cause of action need not be specified in a claim, none of these facts pleaded in the first amended complaint were even hinted at in any claim letter. *See Fall River Joint Unified Sch. Dist. v. Superior Ct.*, 253 Cal. Rptr. 587, 589 (Ct. App. 1988) (claims based on factual

basis that was not noticed in a claim letter do not comply with the requirements of the CTCA). The Court finds that Plaintiffs did not comply with the CTCA for any negligence theory (failure to train, failure to provide medical care, etc.) based on the alleged events outside the Quintanar home and partially dismisses Plaintiffs' negligence claim without leave to amend.[1] Likewise, Plaintiffs concede that they have not provided sufficient facts for a failure-to-train claim. [ECF No. 7 at 4.] As such, the allegations in Para. 49 of the FAC are also dismissed with without leave to amend.

**2. Plaintiffs Have Adequately Stated a Negligence Claim Based on the Events at the Quintanar Home**

As it relates to a 12(b)(6) determination of whether Plaintiffs stated a negligence claim for the core facts identified in the claim letters (the acts allegedly occurring at the Quintanar home), Defendants argue that Plaintiffs' negligence claim includes "vague allegations of intentional actions of deputies," not negligent acts. [ECF No. 6-1 at 7.] They also argue that the County cannot be held responsible, as a matter of law, for a negligence claim.

First, under certain circumstances, the County can be held liable for the actions and omissions of its employees. Pursuant to Section 815.2(a) of the California Government Code, "[a] public entity is liable for any injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee." *See Gant v. Cnty. of Los Angeles*, 772 F.3d 608 (9th Cir. 2014) (explaining that California law recognizes respondeat superior liability); *D.C. by & through Cabelka v. Cnty. of San Diego,* 445 F. Supp. 3d 869, 897 (S.D. Cal. 2020).

The dispositive question for the Court is whether Plaintiffs stated a claim against at least one Deputy Defendant for negligence. The elements of a negligence cause of action

---

[1] Insofar as any other state or common law claim relies on the same facts deemed noncompliant with the CTCA, the Court will dismiss those at the proper juncture should Defendants so move upon further development of the record.

are: (1) a legal duty to use due care; (2) a breach of such legal duty; (3) the breach was the proximate or legal cause of the resulting injury; and (4) actual loss or damage resulting from the breach of the duty of care. *See Ladd v. Cnty. of San Mateo*, 911 P.2d 496 (Cal. 1996). And the facts of an excessive force claim can support a negligence claim under California law: under California law, police officers have a duty not to use excessive force. *See Munoz v. City of Union City*, 16 Cal. Rptr. 3d 521, 538 (Ct. App. 2004). Whether officers breached such duty is analyzed under the reasonableness standard of the Fourth Amendment to the Constitution. *David v. City of Fremont*, No. C 05-46 CW, 2006 WL 2168329, at *21 (N.D. Cal. July 31, 2006) (citing *Munoz*, 16 Cal. Rptr. 3d at 539–43).

As the Court previously explained, Plaintiffs have stated an excessive force claim, at least against Deputy Defendants 1 & 2. Those same alleged facts support a negligence claim (unreasonable force, inappropriate raising of Mr. Quintanar's arm). This claim applies to the County through Section 815.2(a). Although Defendants have not moved to dismiss the negligence claim against the Defendants 3–5 specifically, further development of the record may limit the class of defendants to which this claim applies.

### E. Plaintiffs Have Failed to State a Sec. 1983 Claim Against Deputy Defendants 3–5

Defendants move to dismiss the Section 1983 claims against the Deputy Defendants 3–5. To sufficiently plead a Section 1983 claim, Plaintiffs must set forth facts that each defendant personally violated their constitutional rights. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). This requires an "individualized" assessment of causality to attribute conduct (or lack thereof) that allegedly forms the basis of a constitutional deprivation. *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988).

Plaintiffs have failed to plead sufficient facts identifying how Deputy Defendants 3-5 contributed to any constitutional violation. The sole facts pleaded against Deputy Defendants 3–5 are their (collective) potential involvement in tackling Ms. Quintanar. From the pleadings, it is unclear what those Deputy Defendants individually did to contribute to the alleged constitutional harms. "The inquiry into causation must be

individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Id.* (citing *Rizzo v. Goode*, 423 U.S. 362, 370–71 (1976)). Plaintiffs Section 1983 claims against Deputy Defendants 3–5 are dismissed with leave to amend.

## IV. CONCLUSION

The Court dismisses any negligence theory based on alleged facts unrelated to the events at the Quintanar home without leave to amend. The Court dismisses the Section 1983 claims against Deputy Defendants 3–5 under Rule 12(b)(6) with leave to amend. Plaintiff may file any amended complaint by Jan. 28, 2025.

It is **SO ORDERED**.

Dated: January 14, 2025

Hon. Cathy Ann Bencivengo
United States District Judge